IN THE CIRCUIT COURT OF WHITE COUNTY, TENNESSEE

JAMES MCKINNIE, LONNIE
MCKINNIE, LARRY ROBERTS,
and TINA ROBERTS, individually
and on behalf of all others similarly situated,

Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY
COMPANY,

Defendant.

Docket No. CC2823

JURY DEMANDED

FILED
JUL 14 2017
TIME 4:08ᵖᵐ
BEVERLY F. JOLLEY
CIRCUIT COURT CLERK

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs James McKinnie, Lonnie McKinnie, Larry Roberts, and Tina Roberts, individually and on behalf of a class of all others similarly situated (collectively "Plaintiffs"), and state and allege as follows for their Complaint against Defendant State Farm Fire and Casualty Company:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs James McKinnie and Lonnie McKinnie are husband and wife, and citizens and residents of Putnam County, Tennessee. Plaintiffs Larry Roberts and Tina Roberts are husband and wife, and citizens and residents of White County, Tennessee. At all times relevant hereto, Plaintiffs collectively owned the commercial structures located at 650 N. Spring St, Sparta, TN and 654 N. Spring St., Sparta, TN (the "Insured Premises").

2. Defendant State Farm Fire and Casualty Company ("State Farm") is organized under the laws of the State of Illinois and headquartered in Bloomington, Illinois. State Farm is

EXHIBIT 1

authorized to sell homeowner and property insurance policies in the State of Tennessee, and is engaged in the insurance business in the State of Tennessee.

3. The events giving rise to the individual claims that are the subject of this action occurred in White County, Tennessee. State Farm has insurance agents and claims adjusters in White County for the conduct of its usual and customary business, including the sale of homeowner and property insurance policies and the handling of claims made thereon.

4. Jurisdiction and venue are proper in this Court. This Court has personal jurisdiction over State Farm because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Tennessee. Venue is proper because at least a portion of the events giving rise to the foregoing class action arose in this judicial district, and because named Plaintiffs reside and the subject insured structures are located within this judicial district.

## INDIVIDUAL FACTS

5. At all times relevant hereto, Plaintiffs were the insureds pursuant to an insurance contract whereby State Farm agreed to insure the buildings located on the Insured Premises against property damage, bearing Policy No. 92-BU-D764-3 (the "Policy"). As relevant hereto, the term of the Policy was December 23, 2014 to December 23, 2015.

6. The Policy provided insurance coverage for accidental direct physical loss to the structures located on the Insured Premises, except as specifically excluded or limited by the Policy.

7. Pursuant to the Policy, Plaintiffs paid State Farm an annual premium in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

8. On July 14, 2015, Plaintiffs' buildings located on the Insured Premises suffered damage by hail (the "Loss").

9. The Policy was in effect at the time of the Loss, and the Loss is compensable under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

10. After its inspection, State Farm determined that the Loss was covered by the terms of the Policy. Specifically, by estimate dated February 7, 2017, State Farm agreed that the roof and other exterior components of the buildings were damaged by hail, in the amounts as set forth below:

|  | 654 N. Spring St. | 650 N. Spring St. |
| --- | --- | --- |
| Replacement Cost Value | $524,008.75 | $391,406.93 |
| Less Depreciation | $(70,693.15) | $(53,947.50) |
| Less Deductible | $(50,000.00) | $(0.00) |
| Net Actual Cash Value | $403,315.60 | $349,789.47 |

11. State Farm calculated the amount of the loss by using Xactimate software, a software program manufactured by Xactware Solutions, Inc.

12. Xactimate software allows an insurance adjuster, through a click of a button, to choose whether or not to provide contractor's overhead and profit when calculating replacement cost value.

13. When used, Xactimate's overhead and profit calculations provide for the expenses typically required for a licensed contractor to operate its business, specifically including but not limited to costs associated with state licensure, including the attendant insurance and accounting costs imposed by state licensure.

14. In contrast, if the overhead and profit settings are not used within the Xactimate software, Xactimate excludes any and all the expenses incurred by the licensed contractor associated with running its business, including but not limited to the costs associated with state

3

licensure, general and administrative expenses, office rent, utilities, advertising, office personnel, etc.

15. State Farm's estimates for the Loss did not include general contractor's overhead and profit. However, State Farm provided written materials to the Plaintiffs which stated, "Depending upon the complexity of your repair, our estimate may or may not include an allowance for general contractor's overhead and profit. If you have questions regarding general contractor's overhead and profit and *whether general contractor services are appropriate for your loss*, please contact your claim representative before proceeding with repairs."

16. State Farm made payment in accordance with its determination of the net actual cash value figures set forth above in paragraph 10, without providing for general contractor overhead or profit.

17. Plaintiffs disagreed with the scope and amount of the Loss as determined by State Farm, and submitted a competing Xactimate estimate from a local general contractor for a higher amount.

18. Plaintiffs sought general contractor's overhead and profit for the loss.

19. On June 2, 2017, State Farm increased its calculation of the amount of the Loss, but steadfastly refused to include any general contractor's overhead and profit in its revised estimate of the loss.

20. In addition to the separate issue of contractor's overhead and profit, State Farm has not made payment to Plaintiffs for other items of damage claimed by the Plaintiffs.

## GENERAL FACTUAL AND BACKGROUND ALLEGATIONS

21. Interpreting Tennessee law, the Sixth Circuit has previously held that general contractor's overhead and profit should be payable on a claim if "*a contractor* would reasonably

4

be utilized to make repairs." *Parkway Assoc., LLC v. Harleysville Mut. Ins. Co.*, 129 Fed. Appx. 955, 963 (6th Cir. 2005) (emphasis added). The Sixth Circuit left unanswered the issue of whether the refusal to pay overhead and profit when a contractor is reasonably required constitutes bad faith under Tennessee law. *Id.* at 963, n.4.

22. Tennessee statutory and administrative law, administered by the Tennessee Department of Commerce and Insurance, objectively mandates the scope of construction projects that require the utilization of a licensed contractor based upon monetary thresholds.

23. The Tennessee Contractor's Licensing Act (hereafter the "TCLA") governs the licensing of contractors in the State of Tennessee. Tenn. Code Ann. § 62-6-101, *et seq.* The purpose of the TCLA is "to safeguard life, health, and property and to promote the public welfare by requiring that only properly qualified persons shall be engaged in general contracting." *Farmer v. Farmer*, 528 S.W.2d 539, 542 (Tenn. 1975).

24. Pursuant to the TCLA, contractor licensure is required prior to contracting (bidding, offering to engage, or negotiating a price) for specified categories of construction that exceed specified monetary thresholds:

   a. Prime (General) Contractor - Bidding or contracting directly with the "owner" of the project;

   b. Subcontractor – Contracting directly with any contractor (not to the owner) to perform projects when the total cost of that portion on the project is $25,000 or more, for the following (includes all materials, equipment, and labor):

   - Electrical, Mechanical, Plumbing, HVAC, and Roofing[1]; and

---

[1] Effective January 1, 2014, roofing subcontractors must be licensed as a contractor in addition to performing work as a prime, for projects $25,000 or more. Tenn. Code Ann. § 62-6-102.

- Masonry (when $100,000 or more)

c. Construction Management – When the value of the total project is $25,000 or more.

.Tenn. Code Ann. § 62-6-102.

25. Further, "[i]t is unlawful for any person, firm, or corporation to engage in or offer to engage in contracting for any project in this state, unless, at the time of such engagement or offer to engage, the person, firm, or corporation has been duly licensed with a monetary limitation sufficient to allow the person, firm, or corporation to engage in or offer to engage in such contracting project." Tenn. Code Ann. § 62-6-103. "Any person, firm or corporation that engages or offers to engage in contracting without a license ... commits a Class A misdemeanor." Tenn. Code Ann. § 62-6-120. Violators of the TCLA's licensing rules are also subject to civil penalties, citations, and the penalties authorized by the Tennessee Consumer Protection Act. *E.g.*, Rules for Tenn. Board for Lic. Contractors § 0680-01-.19.

26. Obtaining contractor licensure in the State of Tennessee is an intensive process that requires, *inter alia*, qualifying contractor applicants to provide: (1) qualifying agent test score for "Business and Law" examinations and all applicable "Trade" examinations scores (or reciprocating state waivers) and trade registrations; (2) applicable "power of attorney" forms; (3) reviewed or audited financial statements from a Certified Public Accountant or Licensed Public Accountant actively licensed in Tennessee, and prepared according to General Accepted Accounting Principles; (4) applicable indemnity, guarantee and bond agreements including supplemental personal financial statements; (5) applicable lines of credit from a FDIC approved bank or savings and loan institution; (6) an applicable letter of reference; (7) a Certificate of Insurance ("COI"), with the Tennessee Board for Licensing Contractors listed as a certificate

6

holder, with minimum amounts for general liability insurance coverages bearing coverage limits in ratios corresponding to the specific monetary limit applicable to the applicant's contractor license monetary limits (see allegations in next paragraph), Rules for Tenn. Board for Lic. Contractors § 0680-6-.02; (8) a COI for applicable worker's compensation coverage; (9) proof of compliance with the Tennessee Secretary of State business filings; (10) an application form detailing experience signed under oath; (11) disclosures, for all applicable members of the legal entity, of criminal, litigation, arbitration, bankruptcy, business complaint and administrative histories; (12) potential board interview; and (13) payment of two-year licensure fee.

27. Further, the Tennessee contractor licenses themselves are limited to specific monetary limits, generally "10 times the lesser" of both the applicant contractor's working capital and net worth. Rules for Tenn. Board for Lic. Contractors § 0680-01-.13. To obtain an unlimited license limit in Tennessee, the contractor must show $300,000 in both working capital and net worth from an audited financial statement, and correspondingly increased coverage limits for general liability insurance.

28. In other words, a policyholder such as the Plaintiffs must hire specialty licensed contractors that have monetary licenses that meet or exceed the cost of the project at issue.

29. In this Complaint, the limited circumstances and monetary thresholds under which Tenn. Code Ann. § 62-6-102 mandates utilization of a licensed contractor will be referred to herein as meeting or exceeding "TCLA Thresholds."

30. Plaintiffs' construction projects are subject to TCLA licensure because the projects fall within the specified categories of construction mandating licensure and exceed the TCLA Thresholds. Repair of the covered loss at issue requires the use of construction firms that are

7

licensed contractors under Tennessee law (and that further have the individual monetary limit sufficient to allow the contractor to lawfully work on the policyholder's property).

## STATE FARM'S PRACTICES CONCERNING OVERHEAD AND PROFIT

31. State Farm provides property insurance that indemnifies policyholders for accidental direct physical loss to insured structures.

32. In adjusting and paying claims, State Farm breaches its policies, and encourages the violation of the TCLA, by consistently refusing to pay any general contractor's overhead or profit – even on the limited category of claims that meet or exceed the TCLA Thresholds. State Farm knows that state licensure mandates the contractor to incur overhead expenses not only associated with licensure application, but also attendant insurance, financial institution and accounting expenses. Instead of complying with the Tennessee laws by paying claims for contractor's overhead and profit once the underlying claim meets or exceeds the TCLA Thresholds, and mandates utilization of Tennessee licensed contractors, State Farm determines whether to pay contractor's overhead and profit by reference to its own internal standards, which sharply conflict with the requirements of Tennessee law in favor of non-payment.

33. It cannot be reasonably disputed that general contractor's overhead and profit must be paid and included in the calculation of actual cash value when an insured must, under penalty of law, utilize the services of a licensed contractor. Tennessee statutory and common law mandate that all person performing "contracting" activities above the TCLA Thresholds be licensed as a contractor. Accordingly, these limited categories of property claims must include contractor's overhead and profit in the calculation of loss.

8

## CLASS ACTION ALLEGATIONS

### A. Tennessee Damages and Injunctive Relief Class

34. Pursuant to Rule 23 of the Tennessee Rules of Civil Procedure, Plaintiffs brings this lawsuit as a class action on behalf of themselves and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the class is ascertainable.

35. The proposed class that Plaintiffs seeks to represent is defined as follows:

> All persons and legal entities insured under a State Farm homeowner or property policy insuring property in Tennessee, and for these policyholders: (1) State Farm determined that the policyholder suffered direct physical loss to a dwelling or other structure located in Tennessee that State Farm determined was covered by the terms of the policy; (2) the estimated costs to make the repairs caused by the covered loss met or exceeded one or more of the thresholds set by the Tennessee Contractor's Licensing Act and mandate that those performing work to repair or replace the damaged property hold a valid Tennessee contractor's license; and (3) State Farm refused to pay the policyholder for contractor's overhead and profit in its adjusting/settlement of the claim.

36. Plaintiffs reserve the right to amend the definition of the proposed class. The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff; (4) any person or entities whose applicable suit limitation clause expired prior to the filing of the instant action; (5) any policyholder who received the full limits of applicable coverage; and (6) Plaintiffs' counsel.

37. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds if not thousands of people geographically dispersed across Tennessee have been damaged by State Farm's actions. The

names and addresses of the members of the proposed class are readily identifiable through records maintained by State Farm or from information readily available to State Farm.

38. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits economically impracticable.

39. State Farm has acted on grounds generally applicable to the proposed class in that State Farm has routinely refuses to pay any contractor's overhead and profit even where the construction projects exceed TCLA Thresholds. It is reasonable to expect that State Farm will continue to refuse to pay contractor's overhead and profit even where a contractor's licensure is mandated by the State of Tennessee, thereby making appropriate injunctive and declaratory relief.

40. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether State Farm's policy language allows State Farm to refuse to pay contractor's overhead and profit when the project exceeds the TCLA Thresholds and mandates contractor licensure under the laws of the State of Tennessee;

   b. Whether State Farm's policy language is ambiguous concerning the payment of contractor's overhead and profit;

   c. Whether Plaintiffs and members of the proposed class have been damaged as a result of State Farm's withholding of contractor's overhead and profit when contractor licensure is mandated by Tennessee law;

   d. Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the applicable declaratory judgment laws; and

   e. Whether Plaintiffs and members of the proposed class are entitled to punitive damages.

41. Plaintiffs' claims are typical of the claims of all proposed class members, as they are all similarly affected by State Farm's custom and practice concerning refusal to pay

contractor's overhead and profit when licensed contractor work is mandated by law. Further, Plaintiffs' claims are typical of the claims of all proposed class members because their claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

42. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class while recognizing the risks associated with litigation.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed class members in one action is impracticable and prosecuting individual actions is not feasible. The size of most individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if proposed class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

44. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

45. Questions of law or fact common to Plaintiffs and the proposed class members, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual proposed class members are likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual proposed class members to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by State Farm's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

46. Class certification is further warranted because State Farm has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

### A. Tennessee Issues Class

47. In addition to a Tennessee Damages and Injunctive Relief Class, Plaintiffs also seek a Tennessee Issues Class.

48. Rule 23.03(4) provides that an action may be brought or maintained as a class action with respect to particular issues.

49. Pursuant to Rule 23.03(4), Plaintiffs bring this action on behalf of themselves and of all others similarly situated to resolve, *inter alia*, several important issues relating to State Farm's refusal to pay for contractor's overhead and profit, even when the law of the State of Tennessee permits only a licensed contractor perform the work when exceeding the TCLA Thresholds.

50. Upon resolving some or all of the foregoing issues in favor of the policyholders, the Court could thereafter certify a Tennessee Damages and Injunctive Relief Class. Even if the Court did not certify a damages and injunctive relief class, at the least, an Issues Class would permit individual class members to rely upon the preclusive effect of a determination that refusal to pay for contractor's overhead and profit, when Tennessee mandates only licensed contractors perform the project due to its size, breaches State Farm's policies.

51. The Issues Class is properly brought and should be maintained as a class action under Rule 23.01, satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

52. Individual joinder of the members of the Issues Class would be wholly impracticable. As previously stated, Plaintiffs reasonably believe that several hundred if not thousands of people geographically dispersed across Tennessee have been damaged by State Farm's conduct as described herein. Thus, the numerosity element for class certification is met.

13

53. Questions of law are common to the Issues Class. As this is an issues class under Rule 23(c)(4), there are by definition common questions of law applicable to all class members.

54. Plaintiffs' claims are typical of the Issues Class because their claims arise from the same course of conduct by State Farm, *i.e.*, its refusal to pay for contractor's overhead and profit even where contractor licensure is required. Plaintiffs' claims are, therefore, typical of the Issues Class.

55. Plaintiffs will fairly and adequately represent and protect the interests of the Issues Class. Their interest in vindicating these claims is shared with all members of the Issues Class and there are no conflicts between the named Plaintiffs and the putative class members. In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

56. The Issues Class is properly brought and should be maintained as a class action under Rule 23.02 because an issues class action in this context is superior. Pursuant to Rule 23.02(b)(3), common issues predominate over any questions affecting only individual class members. Proceeding with an issues class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated policyholders to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to

all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

## COUNT I
## BREACH OF CONTRACT

### FAILURE TO PAY CONTRACTOR'S OVERHEAD AND PROFIT

57. Plaintiffs restate and incorporate by reference all preceding allegations.

58. State Farm entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between State Farm, Plaintiffs and members of the proposed class, as well as the manner in which claims for covered losses are handled and paid.

59. The policies of insurance between State Farm and Plaintiffs and the other proposed class members are binding contracts under Tennessee law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

60. State Farm drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation.

61. Plaintiffs and putative class members complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

62. State Farm failed to pay for contractor's overhead and profit even when the size of the underlying project required contractor licensure under Tennessee law by meeting or exceeding the TCLA Thresholds.

63. State Farm breached its contractual duty to pay Plaintiffs and members of the proposed class the full value of their claims by withholding contractor's overhead and profit under these limited circumstances.

64. State Farm's actions in breaching its contractual obligations to Plaintiffs and members of the proposed class benefitted and continue to benefit State Farm. Likewise, State Farm's actions damaged and continue to damage Plaintiffs and members of the proposed class.

65. State Farm's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

66. In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts State Farm unlawfully withheld.

67. Plaintiffs and members of the proposed class seek any and all relief as may be permitted under Tennessee law to remedy the ongoing breaches of contract.

68. State Farm's breaches of contract were intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. Specifically, State Farm intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiffs' and members of the proposed class' claims when liability was clear; (2) unjustly refused to fully and fairly pay Plaintiffs and members of the proposed class the amounts to which they were entitled for their own financial preservation with no reasonable or justifiable basis; (3) engaged in acts and practices toward Plaintiffs and members of the proposed class that amount to acts of baseness, vileness and/or depravity that are contrary to the fiduciary duties owed to them; (4) failed to properly and fully investigate and adjust Plaintiffs and other proposed class members' claims and to pay such claims fully; (5) failed to pay all amounts due and owing under the subject insurance policies with no reasonable or justifiable basis; and (6) denied full and appropriate payment of Plaintiffs' and the proposed class members' claims with no honest disagreement or innocent mistake concerning the validity or the nature and amount of Plaintiffs' claim. State Farm knew, or reasonably should have known, that Plaintiffs and the proposed class members were

justifiably relying on the money and benefits due them under the terms of the subject insurance policies. Nevertheless, acting with conscious disregard for the rights of Plaintiffs and the proposed class members and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship, State Farm consciously refused to fully compensate Plaintiffs and the proposed class members for their losses, and withheld monies and benefits rightfully due Plaintiffs and the proposed class members. In so acting, State Farm intended to and did injure Plaintiffs and the proposed class members in order to protect its own financial interests, and should be punished. Plaintiffs and the proposed class members seek, and are entitled to, punitive damages.

## COUNT II
## BREACH OF CONTRACT
## OTHER CONTRACTUAL CLAIMS

69. Plaintiffs restate and incorporate by reference all preceding allegations.

70. State Farm failed to pay Plaintiffs the full value of their claim unrelated to its failure to pay overhead and profit (Count I), primarily but not limited to understating the scope of their loss (Count II).

71. Plaintiffs complied with all material provisions and performed all of their respective duties with regard to their insurance policy.

72. State Farm's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs.

73. Plaintiffs are entitled to recover damages sufficient to make them whole. Plaintiffs seek any and all relief as may be permitted under Tennessee law.

## COUNT III
## DECLARATORY JUDGMENT AND RELIEF

74. Plaintiffs restate and incorporate by reference all preceding allegations.

75. This Court is empowered by applicable law to declare the rights and legal relations

of parties regardless of whether or not further relief is or could be claimed.

76. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

77. Plaintiff and members of the proposed class have complied with all relevant conditions precedent in their contracts.

78. Plaintiffs seek, personally and on behalf of the proposed class, a declaration that State Farm's withholding of contractor's overhead and profit when the scope of loss mandates contractor licensure under Tennessee law violates their policy and Tennessee law.

79. Plaintiffs further seek, personally and on behalf of the proposed class, any and all equitable relief available under the law that the Court deems necessary and proper to the administration of justice, including, but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion by State Farm in engaging in the conduct described herein, as may be permitted by law.

80. Plaintiffs and members of the proposed class have suffered injuries.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiffs as the representatives of the class, and appointing Gilbert McWherter Scott Bobbitt, PLC as counsel for the class;

2. Enter a declaratory judgment, declaring that State Farm's failure to pay overhead and profit under the limited circumstances described herein is contrary to and breaches the insurance policies issued to Plaintiffs and members of the class;

3. Enter a preliminary and permanent injunction and equitable relief against State Farm and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein;

4. Enter an order that State Farm specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5. Award compensatory damages for all sums improperly withheld, plus prejudgment interest on all such sums, to Plaintiffs and members of the class;

6. Award punitive damages in an amount equal to nine (9) times Plaintiffs' and proposed class members' actual damages, or such other amount as may be allowed by law;

7. Award costs, expenses, and disbursements incurred herein by Plaintiffs and members of the class; and

8. Grant such further and additional relief as the Court deems necessary and proper.

GILBERT McWHERTER
SCOTT BOBBITT PLC

By: _____
J. BRANDON McWHERTER - #21600
341 Cool Springs Blvd, Suite 230
Franklin, TN 37067
(615) 354-1144
bmcwherter@gilbertfirm.com

CLINTON H. SCOTT - #23008
101 N. Highland Ave.
Jackson, TN 38301
(731) 664-1340
cscott@gilbertfirm.com

*Attorneys for Plaintiffs and
Putative Class Representatives*

COST BOND

This firm stands for surety for costs in this cause.

GILBERT McWHERTER
SCOTT BOBBITT PLC

By: _____
J. BRANDON McWHERTER