# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## COOKEVILLE DIVISION

JAMES MCKINNIE, LONNIE     )
MCKINNIE, LARRY ROBERTS,    )
and TINA ROBERTS, individually and  )
on behalf of all others similarly situated, )
                        )
       Plaintiffs,      )
                        )
   v.           )    No. 2:17-cv-00048
                        )    Chief Judge Crenshaw
STATE FARM FIRE and CASUALTY  )
COMPANY,        )
                        )
      Defendant.     )

## <u>MEMORANDUM OPINION</u>

This is a putative class action brought by James and Lonnie McKinnie, and Larry and Tina

Roberts on behalf of State Farm Fire and Casualty Company ("State Farm") insureds. The core claim

is that State Farm refuses to pay prime contractor's overhead and profit associated with the estimated

cost to reconstruct a structure where the covered loss is $25,000 or more.

State Farm has filed a Motion to Dismiss (Doc. No. 29) that has been fully briefed by the

parties (Doc. Nos. 30, 31 & 32). For the reasons that follow, the Motion will be granted in part and

denied in part.

## I. <u>Factual Background</u>

The factual allegations are drawn from the controlling First Amended Complaint. Construed

in Plaintiffs' favor, those facts follow, and will be supplemented where necessary for purposes of

the legal analysis.

## A.

Plaintiffs collectively owned two commercial structures (connected by a breeze way) located

at 650 and 654 North Spring Street in Sparta, Tennessee. Those structures are insured against property loss through an insurance policy ("Policy") issued by State Farm. The Policy contained an endorsement providing coverage on an "actual cash value" valuation basis, i.e. replacement cash value less depreciation. (Doc. No. 25, First Amended Complaint ¶¶ 6, 8, 10, 12).

On July 14, 2015, Plaintiffs' buildings suffered extensive damage as a result of a hail storm. The damage affected the entire roof of both structures (more than 200,000 square feet), necessitating their replacement, as well as the replacement of skylights, ridge end caps, ridge vents, ridge cap flashing, eave trim, gable trim, and other items. (Id. ¶ 13).

Two days after the storm, State Farm inspected the damage and determined the loss was covered under the Policy. Thereafter, State Farm issued multiple estimates for the property damage utilizing Xactimate, a software estimating program. (Id. ¶¶ 15, 16).

The most recent estimate was received by Plaintiffs on June 2, 2017. State Farm determined that the replacement cost value for the damage to the building located at 654 North Spring Street was $556,354.26, which was reduced to $479,993.39 after depreciation. According to the estimate, reconstruction would require approximately 55 hours of "commercial supervision/project management" time, as defined by the Xactimate software program. (Id. ¶¶ 18, 22).

State Farm also determined that the replacement cost value for the property damage at 650 North Spring Street was $419,768.97, which was reduced to $362,932.66 after depreciation. According to this estimate, reconstruction for this building would also require approximately 55 hours of "commercial supervision/project management" time. (Id. ¶¶ 19, 23).

"Commercial supervision/project management" time is defined in the Xactimate software as the time required "to manage commercial jobs where Supervision/Project Management is needed

to coordinate the work of subcontractors, or perform other project management duties."  Further, "[a] Superintendent/Project Manager may complete tasks such as, but not limited to, create/maintain project schedules, coordinate/meet trades, order materials, inspect job sites, obtain permits, meet with inspectors, etc."  (Id. ¶ 24).

On the cover page of each estimate, State Farm provides written guidance concerning the Structural Damage Claim Policy."  It stated that, "[d]epending upon the complexity of your repair, our estimate may or may not include an allowance for general contractor's overhead and profit. If you have questions regarding general contractor's overhead and profit and whether general contractor services are appropriate for your loss, please contact your claim representative before proceeding with repairs."  (Id. ¶ 21).

Plaintiffs contacted Titan Exteriors, Inc. for an estimate of the cost to repair the damaged roofs.  Titan is licensed by the Tennessee Board of Licensing Contractors to act as a "prime contractor" with respect to commercial building reconstruction in Tennessee.  (Id. ¶¶ 34, 35).[1]

Titan, which also used Xactimate, came up with an estimate significantly higher than that of State Farm.  When overhead and profit are included, the difference was more than $270,000.  (Id. ¶ 94).  Even without overhead and profit, Titan's figure was more than $60,000 higher because State Farm failed to include eave trim, light fixtures, pipe boots and other items in its estimate, and failed to provide payment for temporary repair costs incurred in replacing skylight panels that were needed to prevent additional damage to the roof deck and interior of the building.  (Id.). Plaintiffs further allege that, as result of State Farm's failure to promptly adjust and pay the amounts owed, they have

---

[1] Under its license, Titan is limited to a total project size of $1,500,000, including the price of materials, labor, profit and all other costs associated with the project.  (Id. ¶ 45).

been damaged because of the increase in pricing. (Id. ¶ 96).

Plaintiffs sought payment for the omitted licensed prime contractors' overhead and profit from State Farm. State Farm has refused to pay those amounts.

**B.**

Both with respect to their individual claims and that of the class they seek to represent, Plaintiffs contend that State Farm's pattern and practice is to fail to pay overhead and expenses when a prime contractor is required by Tennessee law to perform repairs. It does this by manipulating Xactimate. That is, even though Xactimate allows an insurance adjuster to choose whether to provide full payment for a prime contractor's overhead and profit when calculating replacement cost value, State Farm intentionally changes the settings to omit overhead and profit for a prime contractor. (Id. ¶¶ 50-55). In so doing, State Farm eliminates "payments for all overhead that is not directly attributable to an individual construction project, such as general expenses, payroll expenses, office and building rent and maintenance, management and ownership wages and benefits, utilities, office supplies, salaries for office and sales personnel, office equipment, payroll and construction related software, the costs of ongoing licensure, training of employees, full-time employment of a qualifying agent,[2] audit, accounting, tax and legal fees, advertising, and as profit." (Id. ¶ 56).

Instead of paying proper overhead and profit when a prime contractor is necessary, State Farm pays only "job-related" overhead. Such overhead is the type incurred by a single, unlicensed tradesman or a small, unlicensed subcontractor working a job and is directly related to the job.

---

[2] A qualifying agent, or "QA," is employed by a contractor. He or she "must be experienced in all of the building trades, including sitework, footings, foundation, concrete, concrete reinforcement, masonry, metals, carpentry, roofing, estimating, plan reading, code requirements, associated trades, and OSHA safety." (Id. ¶ 44).

Examples include a temporary power line to a jobsite, or the depreciation of a tradesman's hand-tools. It does not include the overhead, such as the retention of a QA, as well as having the necessary ongoing business liquidity and business assets unrelated to a job. (Id. 55).

Plaintiffs seek to represent a class consisting of:

> [a]ll persons and legal entities insured under a State Farm homeowner or property policy insuring property in Tennessee, and for these policyholders: (1) State Farm determined that the policyholder suffered direct physical loss to a dwelling or other structure located in Tennessee that State Farm determined was covered by the terms of the policy; (2) the estimated costs to make the repairs caused by the covered loss met or exceeded one or more of the thresholds set by the Tennessee Contractor's Licensing Act and mandate that those performing work to repair or replace the damaged property hold a valid Tennessee contractor's license and be a "prime contractor"; and (3) State Farm refused to pay the policyholder for overhead and profit as more fully described herein in its adjusting/settlement of the claim.

(Id. ¶ 70).

## II.  Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007); Inge v. Rock Fin. Corp., 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff need only provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47 (1957), and the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). Nevertheless, the allegations "must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). In short, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679; Twombly, 550 U.S. at 556.

### III. Legal Discussion

The First Amended Complaint is in four counts: Count I alleges breach of contract for State Farm's failure to pay the prime contractor's overhead; Count II alleges breach of contract unrelated to State Farm's refusal to pay overhead; Count III seek a declaration that State Farm's refusal to pay the amounts contractually owed Plaintiffs violates the Policy; and Count IV alleges that State Farm has acted in bad faith, subjecting them to a twenty-five percent penalty. In addition, Plaintiffs seek punitive damages in an amount equal to nine times their actual damages.

### A. Count I – Breach of Contract – Failure to Pay Prime Contractor's Overhead and Profit

Plaintiffs' breach of contract claim is brought on behalf of themselves, as well as the class. The Court considers the class claim first, which is the only one requiring extended discussion.

#### 1. Class Claim

As a preliminary matter, the Court agrees with State Farm that Plaintiffs' class claim has been a moving target. As initially filed, Count I sought to recover for the failure to pay contractor's overhead and profit. In substance, Count I alleged:

> 62. State Farm failed to pay for contractor's overhead and profit even when the size of the underlying project required contractor licensure under Tennessee law by meeting or exceeding the TCLA Thresholds.[3]
>
> 63. State Farm breached its contractual duty to pay Plaintiffs and members of the

[3] The TCLA is an acronym for the Tennessee's Contractors Licensing Act of 1994. Tenn. Code Ann. § 62-6-1-101, *et seq.* Although Plaintiffs do not specifically define the "TCLA Thresholds" in either the initial or First Amended Complaint, presumably this is a reference to the Act's requirement that a licensed contractor be used for jobs in excess of $25,000.

proposed class the full value of their claims by withholding contractor's overhead and profit under these limited circumstances.

64. State Farm's actions in breaching its contractual obligations to Plaintiffs and members of the proposed class benefitted and continue to benefit State Farm. Likewise, State Farms Actions damaged and continue to damage Plaintiffs and members of the proposed class.

(Doc. No. 1-2 ¶¶ 62-64).

After State Farm filed a Motion to Dismiss on the grounds that Plaintiffs' class allegations failed to state a claim because "settled authority provides that GCOP [General Contractor Overhead and Profit] should be included in an actual cash value ("ACV") estimate of repair costs when it is reasonably likely that the services of a general contractor will be required," (Doc. No. 19 at 1), Plaintiffs responded by filing an Amended Complaint. This time the substance of the breach of contract claim on behalf of the class read as follows:

102. State Farm failed to pay prime contractor's overhead and profit even when the size of the underlying project required licensure under Tennessee law by meeting or exceeding the TCLA Thresholds.

103. State Farm breached its contractual duty to pay Plaintiffs and members of the proposed class the full value of their claims by withholding prime contractor's overhead and profit under these limited circumstances, in the manner described herein.

104. State Farm's actions in breaching its contractual obligations to Plaintiffs and members of the proposed class benefitted and continue to benefit State Farm. Likewise, State Farm's actions damaged and continue to damage Plaintiffs and members of the proposed class.

(Doc. No. 25 ¶¶ 102-104).

This version of Plaintiffs' class claim was reiterated in the Initial Case Management Order filed two weeks after the First Amended Complaint. There, Plaintiffs alleged that "State Farm has a custom and practice of consistently refusing to pay prime contractor's overhead and profit in its

adjustment of property damage claims that exceed the thresholds of the Tennessee Contractor Licensing Act requiring licensure to act as a 'prime contractor' under Tenn. Code 62-6-102(6)." (Doc. No. 28 at 1). Nevertheless, in response to the present (second) Motion to Dismiss in which State Farm argued that (1) a contractor's GCOP is includable only when the insured would reasonably be expected to hire a general contractor, and (2) the reasonable necessity standard is not susceptible to class resolution, Plaintiffs couched their claim differently. Now, they argue that State Farm steadfastly refuses to pay for "licensure-related overhead" when a licensed prime contractor performs repairs.

The language of the First Amended Complaint obviously controls. Hayward v. Cleveland Clinic Found., 759 F.3d 601, 617 (6th Cir. 2014) (collecting cases for the proposition that an amended complaint control and renders the original complaint a nullity). However, the Court has set forth the various positions Plaintiffs have taken because they tend to show that, while they now dress their class allegations differently, the claim is cut from the same cloth as that originally advanced.

**a.**

"A majority of courts . . . has determined that an actual cash value payment includes a general contractor's overhead and profit charges in circumstances where the policyholder would be reasonably likely to need a general contractor in repairing or replacing the damaged property in issue." Mills v. Foremost Ins. Co., 511 F.3d 1300, 1306 (11th Cir. 2008) (citing Tritschler v. Allstate Ins. Co., 144 P.3d 519, 529 (Ariz. 2006); Salesin v. State Farm Fire & Cas. Co., 581 N.W.2d 781, 789–91 (Mich. App. 1998); and Gilderman v. State Farm Ins. Co., 649 A.2d 941, 945 (Pa. Super. 1994)). That is the law in Tennessee as well, Parkway Assoc. LLC v. Harleysville Mut. Ins.

<u>Co.</u>, 129 F. App'x 955 (6th Cir. 2005), and Plaintiffs have pointed to nothing in the TCLA that changes this law.

Under the TCLA, any person engaged in "contracting" is required to submit "evidence of qualification to engage in contracting" and "shall be licensed[.]" Tenn. Code Ann. § 62-6-103(a)(1). A license is required for

> any person or entity who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, schedule, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor to install material or equipment for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, housing development, improvement, or any other construction undertaking for which the total cost of the same is twenty-five thousand dollars ($25,000) or more.

<u>Id.</u> § 102(3)(A); <u>accord</u> <u>Kyle v. Williams</u>, 98 S.W.3d 661, 664 (Tenn. 2003).

The TCLA does not refer to a "general contractor" or specifically regulate general contractor services. Instead, the Act defines "contractor" to "include a prime contractor, electrical contractor, electrical subcontractor, mechanical contractor, mechanical subcontractor, plumbing contractor and plumbing subcontractor, masonry contractor, and roofing subcontractor where the total cost of the roofing portion of the construction project is twenty-five thousand dollars ($25,000) or more[.]" Tenn. Code Ann. § 62-6-102(4)(A)(ii). Further, "[i]f the cost of a project exceeds twenty-five thousand dollars ($25,000), 'contractor' also includes a construction manager of any kind, including, but not limited to, a residential construction manager, construction consultant [and] an architect or engineer . . . other than normal architectural or engineering services[.]" <u>Id.</u> § 102(4)(A)(iii).

**b.**

Against the foregoing backdrop, Plaintiffs argue that State Farm wrongfully refuses to pay "overhead and profit associated with obtaining and maintaining a license." (Doc. No. 31 at 4). As

factual support, Plaintiffs rely on the following allegations from the First Amended Complaint:

> Subject to certain monetary limitations not at issue here, only a *licensed* contractor can contract with a building owner in the State of Tennessee;

> By statute, the State calls these licensed contractors "prime contractors";

> Contractor *licensure* in the State of Tennessee requires a contractor to incur several specific categories of overhead costs. These categories of overhead, all of which are required by licensure;

> State Farm uses a commercially available computer software program to pay for property damage claims, called Xactimate;

> Xactimate allows for inclusion or exclusion of different categories of overhead, such as "job-related overhead" and "generalized" overhead; and

> When adjusting property claims that require licensure, State Farm has manipulated Xactimate so as to exclude overhead for "the costs of ongoing *licensure*," "any of the overhead costs associated with Tennessee *licensure*" and the "overhead and profit needed to operate the business of a *licensed* prime contractor."

(Id.) (emphasis in original, internal citations omitted). Leaving aside that Plaintiffs fail to explain what is meant by "licensure-related overhead and profits," fail to explain how the same would be calculated, and fail to allege any facts that it is the custom and practice in Tennessee for "prime contractors" to charge of such expenses, their class claim fails for at least four reasons.

First, Plaintiffs mistakenly equate a "prime contractor" with a "general contractor" by citing cases like <u>Winter v. Smith</u>, 914 S.W.2d 527 (Tenn. Ct. App. 1995). While the Tennessee Court of Appeals in <u>Winters</u> stated that "[t]he traditional construction relationship involves a direct contractual relationship between the owner and the general contractor who is also referred to as the prime contractor, the principal contractor, or occasionally simply as the contractor," the court went on to observe:

> The general contractor performs the work with his own forces, through subcontractors, or with a combination of the two. Subcontractors have contracts with

the general contractor, not the owner, and the general contractor is responsible for scheduling, coordinating, and supervising the subcontractors' work.

Winter v. Smith, 914 S.W.2d 527, 539 (Tenn. Ct. App. 1995); see also, Dempsey v. Correct Mfg. Corp., 755 S.W.2d 798, 806 (Tenn. Ct. App. 1988) ("A general contractor is one who contracts with the owner of a property to perform a complete schedule of construction or other work, and a subcontractor is one who is engaged by the general contractor to perform a part of the work undertaken by the general contractor.").

A prime contractor may or may not be a "general contractor" as reflected by the TCLA definition of a "prime contractor," more specifically, as "one who contracts directly with the owner." Tenn. Code Ann. § 62-6-102(6). Thus, a "prime contractor" could be a "general contractor" who contracts with the owner to hire and supervise the work of various subcontractors, or it could be a contractor (like a roofer or plumber) who simply contracts with the owner to perform all of the necessary work. See Gilerman, 649 A.2d at 225) (noting that "there clearly are certain types of property damage claims which will not require the services of a general contractor," such as "where the loss involves only a damaged pipe, and a plumber alone normally would be called to perform all necessary repairs").

Second, the TCLA provides for a single "contractor" license and does not differentiate between a "contractor," a "general contractor," or a "prime contractor." While Plaintiffs allege that "Titan's licensure" permits it "to act as a 'prime contractor,'" that license –photocopied into the First Amended Complaint–simply identifies Titan as a "Contractor." (Doc. No. 25, ¶ 35). The license does not indicate that Titan is a "prime contractor," or that it is entitled to any extra benefits by virtue of such a title.

Third, insofar as Plaintiffs now argue that the class is entitled to "licensure-related overheard

and profit," this claim is not moored to their individual claim. In Count I, Plaintiffs "individually assert that they are entitled to payment of prime contractor's overhead and profit from State Farm because a prime contractor would be utilized to make to make repairs to their insured property in light of the scope, nature, and complexity of the work necessary as a result of the Loss, without regard to the requirements of the TCLA." (Doc. No. 25 ¶ 108). That is, "irrespective of the application of the TCLA, State Farm's failure to pay Plaintiffs['] prime contractor's overhead and profit constitutes a breach of contract." (Id. ¶ 109).

In support of this "alternative theory," Plaintiffs attached Titan's second estimate to the First Amended Complaint. This estimate contains line items for overhead and profit of ten percent, which are typical of a general contractor overhead and profit claim. See Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co., No. 16 C 3860, 2017 WL 372308, at *2 (N.D. Ill. Jan. 26, 2017) (stating that "it is industry custom for a general contractor making repairs to charge '10 and 10,' or 10% for profit and 10% for overhead on top of the amounts the general contractor pays to the subcontractors," but "if only a single tradesman is required to complete a job, overhead and profit are not charged"); Mills v. Foremost Ins. Co., 269 F.R.D. 663, 668-69 (M.D. Fla. 2010) (noting parties' position that "the custom and practice in the insurance industry in Florida, and the rest of the United States . . . was to include ten percent (10%) overhead and ten percent (10%) profit in the insurer's estimates on all claims in which three or more trades were used to complete repairs").

Saying that an insured is entitled to overhead and profit due to the nature, circumstances, and complexity of the work is markedly different from saying that overhead and profit is recoverable

simply because more than $25,000 is involved.[4]  However, a class claim must be tethered to the underlying individual claim.  See Fed. R. Civ. P. 23(a)(3) (requiring that claims or defenses of the representative party be typical and stating that "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory").

Fourth, while Plaintiffs claim that State Farm "misconstrues Parkway Associates [by] arguing that the TCLA has nothing to do with whether overhead and profits is owed," and "contorts the opinion" by claiming it applies only to general contractors, (Doc. No. 31), it is Plaintiffs who read the decision too broad.  They argue that Parkway stands for the proposition that insurers must pay overhead whenever it is reasonable that *any* contractor makes repairs totaling $25,000 or more, but it is clear the Sixth Circuit was speaking about the use of a "general contractor."

Parkway involved an appraiser's award that "included an allocation for 'general contractor's overhead and profit' of $61,520 for replacement costs and $57,283 for actual case value."  129 F. App'x at 959.  The district court found that the insured was not entitled to overhead and profit because it intended to utilize the services of an unlicensed general contractor.  The Sixth Circuit reversed on this point, stating that the TCLA "says nothing to the issue of whether an insured who contracts to receive the actual cash value of its lost must deduct overhead and profits because it plans to hire an unlicensed contractor."  Id. at 962.

Ultimately, the Sixth Circuit held that the actual cash value of a loss "includes contractor's overhead where a contractor would reasonably utilized to make  repairs."  Id. at 963.  In context,

---

[4]  Under Plaintiffs' reading, a $25,000 roof replacement would automatically become a $30,000 job, even though only a roofer makes the repairs.

however, this was clearly shorthand for the use of the term "general contractor." Not only did the appraisal award under review deal with overhead and profit for a general contractor, the Sixth Circuit relied on <u>Gilderman</u>'s observation that there are some types of losses for which a general contractor might not be needed, but "'[t]here are many instances to where the insured reasonably would be excepted to call a contractor, especially where there is extensive damage.'" <u>Id.</u> (quoting <u>Gilderman</u>, 649 A.2d at 945). Again, this is clearly shorthand for "general contractor" because the quoted language in <u>Gilderman</u> was immediately preceded by the observation that "there are types of property damage where a homeowner would use the services of a general contractor," and immediately followed by the observation that an insured would reasonably consult such a contractor where the repairs "[r]equire the use of more than one trade specialist." <u>Gilderman</u>, 949 A.2d at 945.[5]

Subsequent case law confirms this reading of <u>Parkway</u>. For example, in <u>Parr v. Allstate Ins. Co.</u>, 2014 WL 5210902, at *4 (E.D. La. Oct. 14, 2014), the court observed that "[o]verhead and profit is a pass-through cost intended to reimburse homeowners for the expense of using a general contractor," and cited <u>Parkway</u> for the proposition that the focus remains on whether a general contractor is reasonably required for the scope of the work. Other courts read <u>Parkway</u> the same way. See <u>Nat'l Sec. Fire & Cas. Co. v. DeWitt</u>, 85 So.3d 355, 374 (Ala. 2011) (citing <u>Parkway</u> for the proposition that "[w]hen an insured makes a claim on an actual cash value basis, defendant is required to include GCO & P in the ACV payment when the services of a general contractor are reasonably likely to be required"); <u>Greenspoint Inv'rs, Ltd. v. Travelers Lloyds Ins. Co.</u>, 2015 WL

---

[5] In fact, State Farm conceded in <u>Gilderman</u> that "it is generally accepted in the building trade that if more than three trade categories of subcontractors are involved in the repairs, the owner is entitled to the services of a general contractor to obtain bids, hire the subcontractors and coordinate/supervise the work." <u>Id</u>.

965730, at *5 (S.D. Tex. Mar. 3, 2015) (citing <u>Parkway</u> for the proposition that if the facts show insured "had incurred or would incur the expense of a general contractor, an award of overhead and profit was appropriate in calculating ACV").

Plaintiff s'class claims for breach of contract will be dismissed for failure to state a claim upon which relief can be granted.

### 2. Individual Claim

While <u>Parkway</u> supports dismissal of Plaintiffs' class claim, it also serves to bolster their individual claim. <u>Parkway</u> teaches that overhead and profit is recoverable by the insured where it is reasonable that a general contractor would be needed. Plaintiffs' allegations more than support this claim.

Plaintiffs allege that the scope nature and complexity of the work warrant a general contractor. By State Farm's own estimate, the loss was nearly $1,000,000 (minus applicable depreciation and the deductible), and completion of the project would take 20 weeks for both buildings. (Doc. No. 25, First Amended Complaint ¶ 92). Further, State Farm itself arguably contemplated the possibility of the need for a general contractor when it wrote that, "[d]epending upon the complexity of your repair, our estimate may or may not include an allowance for general contractor's overhead and profit," and then estimated that reconstruction of the loss would require approximately 55 hours of "commercial supervision/project management time" for each of the two buildings. (<u>Id.</u> ¶¶ 21-23). Further, the second estimate from Titan roofing (Doc. No. 29-2) that State Farm attached to its Motion to Dismiss, and the State Farm Xactimate print-out (Doc. No. 31-1) that Plaintiffs attached to their reply, suggest the use of multiple trades, including demolition laborer, equipment operators, electrician and roofer. There is more than enough in the First Amended

Complaint[6] to support Plaintiffs' individual breach of contract claim based on State Farm's refusal to pay overhead and profits.

## B. Count II – Breach of Contract – Other Contractual Claims

The allegations in the First Amended Complaint are also more than sufficient to support Plaintiffs' claim that State Farm breached the insurance policy contract by failing to pay for other items beyond profit and overhead. Specifically, Plaintiffs allege:

> 95. Although a portion of the differences between the estimates of State Farm and Titan are related to State Farm's failure to pay overhead and profit, other differences include, but are not limited to, the following:
>
> a. Errors in State Farm's measurements, scope, and quantities;
>
> b. State Farm's omission of several items from its estimates, including eave trim, light fixtures, pipe boots, etc.; and
>
> c. State Farm's failure to pay for temporary repair costs incurred by Plaintiffs to replace skylight panels broken by hail in order to promptly mitigate losses and to prevent further damage to the roof deck and interior of the building. The temporary repairs totaled $9,518.79 at 654 North Spring Street (the "Front Building") and $9,409.23 at 650 North Spring Street (the "Rear Building").
>
> 96. Additionally, as result of State Farm's failure to promptly adjust and pay the amounts owed, Plaintiffs have been further damaged as a result of increases in pricing.

(Doc. No. 25, First Amended Complaint ¶ 95-96).

State Farm characterizes the foregoing as "vague allegations," and argues that "plaintiffs

---

[6] As a general rule, Motions to Dismiss under Rule 12(b)(6) are limited to a review of the pleadings. However, the Sixth Circuit has "taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001). Further, "where the plaintiff 'fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." Thomas v. Publishers Clearing House, Inc., 29 F. App'x 319, 322 (6th Cir. 2002). Both Titan's second estimate and State Farm Xactimate estimate are specifically referenced in the First Amendment Complaint, and are properly in resolving the Motion to Dismiss.

must separately identify each aspect of their insurance claims that they assert was not paid, and explain how the alleged non-payment breached the policy." (Doc. No. 30 at 16). It cites no authority for that proposition, however. Rule 8 of the Federal Rules of Civil Procedure, in contrast, "ensures simply that each party has adequate notice of the other's claims and an opportunity to meet them." Lawson v. Huerta, 692 F. App'x 790, 794 (6th Cir. 2017). The Rules "provide for liberal notice pleading at the outset of the litigation because '[t]he provisions for discovery are so flexible' that, by the time a case is ready for summary judgment, 'the gravamen of the dispute [has been] brought frankly into the open for inspection by the court.'" Tucker v. Union of Needletrades, Indus. & Textile Emp., 407 F.3d 784, 788 (6th Cir. 2005) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512–13 (2002)).

## C. Count III – Declaratory Judgment

Noting that a request for declaratory or injunctive relief is a remedy and not a cause of action, State Farm argues dismissal of Count III is warranted because Plaintiffs' breach of contract claim fail. Because the Court finds differently in regard to Plaintiffs' individual capacity breach of contract claim, dismissal of their request for a declaratory judgment would be premature.

## D. Count IV – Statutory Bad Faith

Tennessee law imposes a 25% penalty on insurers who fail to pay a reimbursable loss within 60 days of a demand by the insured party, and requires the insurer to pay the claimant's reasonable attorney's fees incurred in contesting the insurer's bad faith denial. Tenn. Code Ann. § 56–7–105. "In order to recover bad faith penalties under this statute, a plaintiff must prove: '(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making demand before filing suit

(unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.'" Ginn v. American Heritage Life Ins. Co., 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004) (quoting Stooksbury v. Am. Nat. Prop. & Cas. Co., 126 S.W.3d 505, 519 (Tenn. Ct. App. 2003)).

In seeking dismissal of the bad faith claim, State Farm argues that "Plaintiffs have failed to properly allege either a formal demand or bad faith by State Farm." (Doc. No. 30 at 18). At this point in the proceedings, however, the allegations in the First Amended Complaint are to be construed liberally in favor of Plaintiffs, and all factual allegations are presumed to be true. In re Ferro Corp. Derivative Litig., 511 F.3d 611, 617 (6th Cir. 2008); Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield, 552 F.3d 430, 434 (6th Cir. 2008). Those allegations are sufficient to state a bad faith claim.

In Count IV, Plaintiffs specifically allege State Farm's refusal to pay was arbitrary and capricious, and that "more than sixty (60) days have passed since a formal demand has been made on State Farm and full payment has not been made for the Loss[.]" (Doc. No. 25, First Amended Complaint ¶ 126). They also allege that State Farm acted with conscious disregard of their rights in: (1) intentionally failing to inform Plaintiffs of their rights under the Policy; (2) failing to attempt in good faith to effectuate a prompt and equitable settlement of the claim when liability was clear; (3) refusing to pay Plaintiffs in full without conducting a reasonable investigation; (4) refusing to appropriately adjust and investigate Plaintiffs' claim and to obtain all available information before alleging it had no further obligation; (5) failing to promptly provide Plaintiffs with reasonable and accurate explanations for its refusal to pay their claims in full; (6) failing to pay all amounts due Plaintiffs with no reasonable or justifiable basis; and (7) unjustifiably refusing to pay the claim for

its own financial preservation.  (Id. ¶¶ 124-126).  Accordingly, Count IV will not be dismissed.

**E.  Prayer for Relief – Punitive Damages**

As both parties recognize, there is a split of authority on the issue of whether punitive damages are available in breach of insurance contract cases.  In <u>Heil Co. v. Evanston Ins. Co.</u>, 690 F.3d 722, 728 (6th Cir. 2012), the Sixth Circuit held that the bad faith statute, "Tenn.Code Ann. § 56–7–105[,] precludes punitive damages . . . because it provides the exclusive extracontractual remedy for an insurer's bad faith refusal to pay on a policy."  Shortly thereafter, in <u>Riad v. Erie Ins. Exch.</u>, 436 S.W.3d 256, 276 (Tenn. Ct. App. 2013), the Tennessee Court of Appeals disagreed with that conclusion and held that, in an insurance dispute, a "Plaintiff was entitled to recover any damages applicable in breach of contract actions and was not statutorily limited to the recovery of the insured loss and the bad faith penalty."  Since then, the federal district courts in Tennessee have divided on the question, with some following <u>Heil</u>, <u>see</u> <u>e.g.</u>, <u>Jeffers v. Metro. Life Ins. Co.</u>, 2014 U.S. Dist. LEXIS 12658, at *9–10 (M.D. Tenn. Jan. 2, 2014), and others following <u>Riad</u>, <u>see</u> <u>e.g.</u>, <u>Am. Nat'l Prop. & Cas. Co. v. Stutte</u>, 2015 WL 1650933, at *4  (E.D. Tenn. Apr. 14, 2015).

The existence of both <u>Heil</u> and <u>Riad</u> presents an interesting question in diversity cases regarding the intersection between following controlling circuit authority, on the one hand, and attempting to divine how the state's highest court would decide the issue, on the other.  However, this is a question the Court need decide because both <u>Heil</u> and <u>Riad</u> were decided on facts that predated the enactment of the Tennessee Unfair Trade Practices and Unfair Claims Settlement Act that made Titles 50 and 56 of the Tennessee Code the  exclusive remedy for unfair settlement claims practices against an insurer.  The Act provides:

> Notwithstanding any other law, title 50 and this title shall provide the sole and
> exclusive statutory remedies and sanctions applicable to an insurer, person, or entity

licensed, permitted, or authorized to do business under this title for alleged breach of, or for alleged unfair or deceptive acts or practices in connection with, a contract of insurance as such term is defined in § 56-7-101(a). Nothing in this section shall be construed to eliminate or otherwise affect any:

> (1) Remedy, cause of action, right to relief or sanction available under common law;

> (2) Right to declaratory, injunctive or equitable relief, whether provided under title 29 or the Tennessee Rules of Civil Procedure; or

> (3) Statutory remedy, cause of action, right to relief or sanction referenced in title 50 or this title.

Tenn. Code Ann. § 56-8-113.

"The passage of this statute eliminated the availability of treble damages under the TCPA [Tennessee Consumer Protection Act] in a breach-of-insurance-contract action arising after April 29, 2011." Carroll v. Nationwide Prop. & Cas. Co., 2015 WL 3607654, at *3 (W.D. Tenn. June 8, 2015). By its very terms, however, the statute did not eliminate the availability of common law punitive damages. Id.

Under "the series-qualifier canon of statutory construction," which "states that 'a modifier at the beginning or end of a series of terms modifies all the terms,'" United States v. Laraneta, 700 F.3d 983, 989 (7th Cir. 2012)," the modifier "statutory" applies to both "remedies" and "sanctions." Lindenberg v. Jackson Nat'l Life Ins. Co., 2014 WL 11332306, at *7 (W.D. Tenn. Dec. 9, 2014). This construction suggests "the Tennessee General Assembly intended the scope of § 113 to be limited to remedies and sanctions of a *statutory* nature." Id. (emphasis added). Any doubts about that construction is removed by the provision that "nothing in this section shall be construed to eliminate or otherwise affect any . . . [r]emedy . . . available under common law[.]" Tenn. Code Ann. § 56-8-113. In short, "[i]f the Tennessee General Assembly wished to eliminate common-law

punitive damages in [breach of insurance contract] cases. . ., it did the opposite with section 56–8–113." Carroll, 2015 WL 3607654, at *5 (W.D. Tenn. June 8, 2015).[7] Thus, Plaintiffs' request for punitive damages will not be dismissed.

## IV. **Conclusion**

On the basis of the foregoing, State Farms Motion to Dismiss will be granted with respect to Plaintiffs' class claim for punitive damages as set forth in Count I of the First Amended Complaint  In all other respects the Motion will be denied.

An appropriate Order will enter.

WAVERLY D. CRENSHAW
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] Insofar as State Farm argues that the factual allegations are insufficient to support punitive damages, the Court disagrees for the reasons already stated in relation to Plaintiffs' request for the bad faith penalty.